# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DANNA JOHNSON, | : | Case No. 3:11-cv-417 |
| Plaintiff, | | District Judge Thomas M. Rose |
| | : | Magistrate Judge Michael J. Newman |
| vs. | | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff Danna Johnson ("Plaintiff") "not disabled" and therefore unentitled to Disability Insurance Benefits ("DIB").

This case is before the Court upon Plaintiff's Statement of Specific Errors (doc. 6), the Commissioner's Memorandum in Opposition (doc. 9), Plaintiff's Reply (doc. 10), the administrative record (doc. 5),[2] and the record as a whole.

## I. BACKGROUND

**A. Procedural History**

Plaintiff filed her initial DIB application on December 11, 2008, asserting that she has been under a "disability" since June 1, 2007. PageID 151-54. Plaintiff claims she is disabled

---
[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2]Hereafter, citations to the electronically-filed administrative record will refer only to the PageID__.

due to schizoaffective disorder, bipolar disorder, social disorder, mood disorder, paranoia, depression, and anxiety. PageID 187.

Following initial administrative denials of her applications, Plaintiff received a hearing before ALJ Amelia Lombardo on October 12, 2010. PageID 69-90. In December 2010, the ALJ issued a written decision in which she concluded that Plaintiff was "not disabled." PageID 49-60. Specifically, the ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of the decision, were as follows:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since June 1, 2007, the alleged onset date (20 C.F.R. 404.1571 *et seq).*

3. The claimant has the following severe impairments: schizoaffective disorder, anxiety, and polysubstance abuse (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels, including heavy work. Giving the claimant the full benefit of the doubt with regard to her allegations and subjective complaints, it is found that she is limited to low stress work, which is defined in this case as no assembly line production quotas and no fast paced work. She is further limited to jobs that would require only minimal contact with supervisors, co-workers, and the general public.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on November 24, 1958 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work in unskilled (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569 (a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2007, through the date of this decision (20 CFR 404.1520(g)).

PageID 52-59.

On September 28, 2011, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 42-43; *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thereafter, Plaintiff filed this timely appeal on November 29, 2011. Doc. 2.

B. **Plaintiff's Vocational Profile and Testimony**

Plaintiff was 48 years old on her alleged onset date and thus considered a "younger individual." *See* 20 C.F.R. § 404.1563(c); PageID 153. Plaintiff has at least a high school equivalent education. *See* PageID 191. She has past relevant work as an assembler, a hand packager, and was self-employed as a child monitor. *See* PageID 86.

At the hearing, Plaintiff testified that she has anxiety attacks -- especially in social situations -- and further testified that she experiences paranoia following those attacks. PageID 76. Plaintiff reported that she hears voices in her head, and testified that "people are out to kill me." *Id.* She also reported suffering from "blackouts" approximately two to three times a year – which last as long as three to four days -- during which she is unable to remember anything that occurred over a number of days. PageID 82.

Plaintiff indicated that she has trouble sleeping; at times she will sleep most of the day, while at other times she is unable to sleep at all. PageID 76. She also stated that she has trouble talking, "retaining things," and suffers from obsessive thinking. PageID 76-77. Plaintiff reported that she has crying spells nearly every day, and often suffers from mood swings. PageID 81-83. She also reported that although the medication which she is prescribed helps, she nevertheless continues to experience mood swings at times. *Id.*

Plaintiff testified that she lives alone, and is independent in activities of daily living, including being able to drive, use public transportation, cook, wash dishes, and do laundry. PageID 77-79; *see also* PageID 209-11. Plaintiff also goes to thrift stores, attends her grandchildren's activities, belongs to a church, and attends Alcoholics Anonymous. *See* PageID 389. She was last employed at Goodwill Industries (through work rehabilitation services), but was fired for absenteeism. PageID 75. She testified that although she stopped using alcohol in November 2008, she has relapsed four times since that date. PageID 74.

Plaintiff acknowledged a history of methamphetamine and crack-cocaine use, but reported that she had stopped using illegal narcotics in November 2008 and has relapsed twice since that time. *Id.*

### C. Vocational Expert Testimony

Charlotta Ewers, a Vocational Expert ("VE"), testified that, based on Plaintiff's age, education, work experience and RFC, she could not perform her past relevant work as an assembly worker. Nevertheless, in responding to various hypotheticals posed by the ALJ based upon Plaintiff's RFC, the VE testified that Plaintiff could perform a significant number of jobs at a "medium" exertional level (including positions such as a hospital cleaner, washer, and store laborer), as well as a significant number of jobs at the "light" level (including laundry folder,

warehouse checker, and mail clerk). *Id.*

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence; and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742,745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found a claimant disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a

"disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Miller v. Comm'r of Soc. Sec.,* 181 F. Supp. 2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is "disabled" under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

### III. OPINION AND ANALYSIS

As a preliminary note, Plaintiff's pertinent medical findings and opinions have been adequately summarized in the parties' briefs, *see* doc. 6 at PageID 1210-27; doc. 9 at PageID

1232-43, and the Court will not fully repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff's Statement of Specific Errors challenges the ALJ's finding of non-disability on the grounds that the ALJ: (1) failed to grant controlling weight to the opinion of Plaintiff's treating psychiatrist, Dong Moon, M.D.; (2) failed to grant proper weight to the opinion of Plaintiff's nurse practitioner, Cynthia Van Ausdal, R.N.; and (3) failed to adequately articulate the weight accorded to the opinion of Dr. Moon. *See* doc. 6 at PageID 1210.

The Court has carefully reviewed the ALJ's decision to determine whether the critical findings of fact were made in compliance with the applicable law, and whether substantial evidence supports those findings. Based upon its review, the Court finds that the ALJ's decision is supported by substantial evidence, and recommends, for the reasons that follow, that the non-disability determination be affirmed.

**A. The ALJ Did Not Err in According Less Than Controlling Weight to the Opinion of Dr. Moon**

In her first and third assignments of error, Plaintiff alleges that the ALJ failed to give controlling weight to the medical opinion of Dr. Moon, her treating psychiatrist, and failed to articulate the level of weight actually accorded to his opinion. *See* doc. 6 at PageID 1210. Because both assignments of error relate to the ALJ's consideration of Dr. Moon's opinion, the Court will consider both arguments simultaneously.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. In general, the opinions of treating physicians (and treating psychiatrists) are entitled to controlling weight. *Cruse v. Comm'r of Soc. Sec.*, 502 F. 3d 532, 540 (6th Cir. 2007). Under the "treating physician rule," the ALJ is required to "generally give

7

greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because: 'these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)).

Nevertheless, a treating physician's statement -- that a claimant is disabled -- is not determinative of the ultimate issue of disability. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight only if it is well-supported by medically acceptable clinical and laboratory techniques, and is not inconsistent with the other evidence of record. *Id.*; *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). Accordingly, an ALJ may properly reject a treating physician's opinion that does not meet these standards. *See* 20 C.F.R. § 404.1527(d)(2).

Here, Dr. Moon was Plaintiff's treating psychiatrist during part of her alleged disability period. PageID 384-87, 1102-07. From the alleged onset date of July 1, 2007 through March 21, 2008, the record reflects that Plaintiff was seen by Dr. Moon seven times. PageID 1102-07. Dr. Moon did not examine Plaintiff at any time after March 21, 2008. Plaintiff's assignments of error stem from a questionnaire Dr. Moon completed on January 22, 2009 (at the request of the state agency), in which he opined, *inter alia*, that Plaintiff was "unable to tolerate stress -- particularly work related" and was "unable to hold a job because of high anxiety." PageID 384-87; doc. 6 at PageID 1219-23. Plaintiff alleges that as Plaintiff's treating psychiatrist, Dr. Moon's opinion is entitled to controlling weight. *Id*.

8

A treating source's opinion as to a claimant's employability, however, is a legal conclusion, and not a "medical source opinion," as defined by Social Security regulations, which the ALJ must accept. *See* 20 C.F.R. §§ 404.1527(c)–(d). Social Security regulations mandate that the issue of whether or not a claimant is able to work is a dispositive administrative issue reserved to the Commissioner. *Id.* Therefore, Dr. Moon's opinion -- that Plaintiff was unemployable -- was not entitled to controlling weight. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Aside from the opinion that Plaintiff was unemployable, Plaintiff does not cite any other opinion of Dr. Moon which was properly supported and consistent with the other evidence of record, but nevertheless improperly weighed. As noted by the ALJ, the questionnaire submitted by Dr. Moon on January 22, 2009 was completed almost one year after he last examined Plaintiff, and was inconsistent with his own treatment notes from the period in which he actually treated Plaintiff. PageID 57. Specifically, the ALJ found inconsistent Dr. Moon's notes from 2007 and early 2008, which reported Plaintiff's condition to be relatively stable. Dr. Moon then also opined that when Plaintiff is substance-free and compliant with treatment, her condition improves as evidenced by her work history. PageID 57-58. For instance, Dr. Moon's treatment records from Plaintiff's alleged onset date through January 2008 consistently reflect Dr. Moon's observations and opinion that Plaintiff was either "mildly" or "moderately anxious," "somewhat depressed," and her condition was "improving and stabilizing" or "stable." PageID 1103-06.

Dr. Moon's opinion was not completely disregarded. In February 2008, Dr. Moon reported diagnoses of mood disorder, generalized anxiety disorder, cocaine abuse in remission, and alcohol abuse in remission. *See* PageID 334-36. Those diagnoses were consistent with the "severe impairments" found at step two of the ALJ's analysis. *Cf.* PageID 52-54, 334-36.

9

Moreover, Dr. Moon's conclusions -- that Plaintiff is "mild to moderately"[3] impaired in her social interaction; that her ability to remember, understand, and follow instructions "may become impaired when she is in high anxiety when she is not on medication"; that her ability to maintain attention and sustain concentration would "become impaired when anxiety goes up"; and that her anxiety would be "likely to increase" when faced with "increased work pressure" -- were adequately taken into account by the ALJ when formulating her mental RFC, as evidenced by the limitations to low-stress work and minimal social interaction. *See* PageID 52-58, 335.

Plaintiff has given only cursory attention to the requirement that a treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and must not be "inconsistent with the other substantial evidence" in the record before it is entitled to controlling weight. *Walters*, 127 F.3d at 530 (quoting 20 C.F.R. § 404.1527(d)(2)). In fact, significant and substantial evidence exists in the record supporting the ALJ's finding that Plaintiff's impairments are not disabling. For instance, Jerry Flexman, Ph.D. conducted a consultative examination in March 2009, assigned a GAF of 55,[4] and concluded that Plaintiff's impairments were only "mild" or "moderate" in severity. PageID 388-93. Dr. Flexman's opinion is consistent with the opinion of Douglass Pawlarczyk, Ph.D., who reported in October 2008 that Plaintiff did not meet any of the Listings for mental impairments,

---

[3]"Moderate" functional limitations are not suggestive of a disability. *See Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011) (noting that "moderate" functional limitations are "non-disabling").

[4]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Comm'r*, 61 F.App'x 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. A GAF of 51-60 indicates "moderate symptoms OR any moderate difficulty in social, occupational, or school functioning." *Id.* (capitalization in original); *accord Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997) ("moderate difficulty" does not rise to the level of disability).

and that the limitations imposed by her impairments were "moderate" -- not "marked" or "extreme." PageID 343-55. In conducting a mental RFC assessment, Dr. Pawlarczyk concluded that Plaintiff was not significantly limited in her ability to perform simple, repetitive tasks, or in her ability to relate superficially with coworkers. PageID 339-42. Likewise, David Demuth, M.D. conducted a psychiatric review in March 2009, and opined that Plaintiff's mental impairments were just "mild" or "moderate" – *i.e.*, neither disabling nor sufficient to meet a Listing. PageID 395-408. The mental RFC conducted by Dr. Demuth was consistent with the "mild" and "moderate" limitation findings of Drs. Flexman and Pawlarczyk, and similarly concluded Plaintiff was capable of conducting simple, routine, low-stress work. PageID 409-13.

In according less than controlling weight to Dr. Moon's opinion, the ALJ appropriately utilized the regulations discussed *supra*, and properly weighed Dr. Moon's opinions given the other evidence of record -- including the medical opinions of the reviewing and consultative examiners, as well as Plaintiff's activities of daily living. Without question, the amount of weight the ALJ ultimately accorded Dr. Moon's opinion is well within the permissible "zone of choice" that the Sixth Circuit discussed in *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). Accordingly, the Court finds Plaintiff's first and third assignments of error to be unmeritorious.

**B. The ALJ Properly Weighed the Opinion of Plaintiff's Nurse Practitioner**

Plaintiff's remaining assignment of error challenges the weight accorded to the opinion of her nurse practitioner, Cynthia VanAusdal, R.N. *See* doc. 6 at PageID 1223.

Under Social Security Regulations, a nurse practitioner is not an "acceptable medical source" as defined by 20 C.F.R. § 404.1513(a)(1)-(5). While SSR-03p recognizes that "non-medical sources" who have had contact with a claimant in their professional capacity are valuable sources of evidence for assessing impairment severity and functioning, the regulation

also allows the ALJ to give greater weight to "acceptable medical sources" who are recognized as more-qualified healthcare professionals. *Id.*

Under the provisions of SSR 06-03p, the opinions of "non-medical sources," like those of "acceptable medical sources" must be weighed and evaluated with the criteria set forth in 20 CFR § 404.1527, as further amplified in Social Security Rulings 96-2p and 96-5p. The factors to consider include how consistent the opinion is with other evidence, and the degree to which the source presents relevant evidence to support that opinion. *See* 20 CFR § 404.1527.

Plaintiff argues that the ALJ "summarily rejected" Ms. VanAusdal's opinion without any consideration of the aforementioned rulings and regulations. However, the ALJ's decision reveals the depth of her analysis, and the factors considered when weighing Ms. VanAudsal's opinion:

> Cynthia VanAusdal, R.N, a nurse practitioner reported that the claimant would be disabled from all work activity due to her psychiatric symptoms (Exhibits 7F and 46F). Under the provisions of 20 CFR 404.1513(a), nurse practitioners are not acceptable medical sources. As such, there is no treating source issue. However, under the provision of Social Security Ruling 06-03p, the opinions of non-acceptable, as well as acceptable medical sources, must be weighed and evaluated in accordance with the criteria set forth in 20 CFR 404.1527, as further amplified in Social Security Rulings 96-2p and 96-5p. The factors to consider in this process include: the length of the relationship with the claimant, how consistent the opinion is with other evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the individual's opinion, and any other factors that tend to support or refute the opinion.
> The opinion of Ms. VanAusdal has been weighed and considered in accordance with the criteria set forth in 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p, 96-5p, and 06-03p. It is found that the opinion is not entitled to any special weight under the facts and circumstances of this particular case, and such opinion is rejected as providing a basis for any residual functional capacity that is different from the one set forth above. The opinion is inconsistent with the treatment notes, which showed a positive response to treatment (Exhibits 6F, 21F, and 45F), as well as with the claimant's reported activities of housecleaning and babysitting. It is also inconsistent with Ms. VanAusdal's assignment of Global Assessment of Functioning (GAF) scores of 50-55,

> generally indicative of only moderate symptoms. *(Diagnostic and Statistical Manual of MentalDisorders,* 4th Ed [*DSM IV*], Text Revision, Washington, DC, American Psychiatric Association, 2000, pp. 32-34). It is further noted that Basic Medical forms (ODHS 7302) are used by the various county welfare departments to determine eligibility for Medicaid benefits. They were not designed, nor were they ever intended to be used, to determine eligibility for disability benefits under the Social Security Act.

PageID 55-56.

Although Nurse VanAusdal's opinion was not given the controlling weight which Plaintiff impliedly argues it should have received, the Court nevertheless finds the ALJ's weighing of her opinion to be supported by substantial evidence, and in compliance with Social Security regulations.

As noted by the ALJ, Nurse VanAusdal's opinion -- that Plaintiff was unable to perform any work activity, *see* PageID 377-78, 1207-09 -- is inconsistent with the other medical opinions of record, including those of Drs. Flexman, Demuth, Pawlarczyk, and, to an extent, Moon. *Cf.* PageID 339-55, 388-93, 409-13. Additionally, in the assessments where Nurse VanAusdal reported her opinion that Plaintiff is unable to perform any work activity or was markedly limited, she does not indicate whether such an opinion is based on her diagnoses of alcohol dependence and cocaine dependence, or whether it is because of symptoms associated with her diagnoses of schizoaffective disorder or mood disorder. *See* PageID 377-78, 1207-09. Accordingly, the ALJ properly considered Nurse VanAusdal's opinion, and made no error in weighing it along with the other evidence of record. *See Adkins v. Kentland Elkhorn Coal Corp.*, No. 95-3122, 1996 U.S. App. LEXIS 17293, *12-13 (6th Cir. Jun. 3, 1996) ("[t]he ALJ should reject as insufficiently reasoned any medical opinion that reaches a conclusion contrary to objective clinical evidence without explanation.").

Furthermore, the record supports the ALJ's finding that Nurse VanAusdal's opinion is inconsistent with Plaintiff's reported activities of daily living, such as being independent in daily activities of living and being part of social groups. *See* PageID 389. For instance, Nurse VanAusdal opines Plaintiff is "markedly limited" in her ability to utilize public transportation, *see* PageID 377, but Plaintiff admits regularly taking the bus. *See*, *e.g.*, PageID 389. Similarly, Nurse VanAusdal reports that Plaintiff has "marked" impairments in her activities of daily living, but this conflicts with Plaintiff's admission -- under oath, and before the ALJ -- that she lives alone, attends church and Alcoholics Anonymous, spends time with her children and grandchildren, does dishes, laundry, and house cleaning, manage her own finances, and is able to drive herself to appointments. PageID 389. Moreover, Nurse VanAusdal's assignment of a GAF score of 50-55 is generally indicative of only moderate symptoms, and not of the severity which would render a person disabled from all work activity. DSM-IV-TR at 32-34. To the extent Plaintiff further argues that the ALJ "completely sets aside" the mental RFC assessment completed by Nurse VanAusdal for the Department of Job and Family Services, the ALJ acted properly pursuant to 20 CFR § 404.1527, and granted this opinion no special weight as it is inconsistent with Nurse VanAusdal's treatment notes and the record as a whole.

Given the contrary medical evidence in the record, the ALJ acted well within the permissible "zone of choice" in weighing Nurse VanAusdal's opinion. *Felisky*, 35 F.3d at 1035. As such, the Court finds the ALJ's evaluation of Nurse VanAusdal's option to be supported by substantial evidence, and Plaintiff's final assignment of error to be without merit.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignments of error to be unavailing. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The ALJ's non-disability finding be found supported by substantial evidence, and **AFFIRMED**; and

2. This case be **CLOSED**.


October 9, 2012                                          s/**Michael J. Newman**
                                                         United States Magistrate Judge


**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).